## WADSWORTH *vs.* THE BUFFALO HYDRAULIC ASSOCIATION.

In 1828, the defendant, in pursuance of an authority given by its charter, obtained from the Seneca nation of indians, the right to enter upon certain lands then possessed and occupied by them as one of their reservations, and to make a canal across the same for the purpose of supplying Buffalo with water, and the defendant entered, and made the canal accordingly. At that time O., T. & R. held, in trust for the proprietors, the pre-emptive title or right to purchase such lands whenever the indians should sell. The defendant also made an arrangement with the proprietors of such pre-emptive right, touching the right and privilege of using the canal. And an indenture was executed by O., T. & R., the trustees, and by the proprietors of the pre-

emptive right, of the first part, and the defendant of the second part; by which, after reciting that the use and privilege of Buffalo creek was necessary for the purposes of the defendant, the parties of the first part granted and conveyed to the party of the second part, the right and privilege, by and with the consent of the indians, to enter upon and take possession of the piece of land in the bed of the creek, and to erect a dam, and to divert the water, and to excavate and make a canal, &c. and to have, use and enjoy the privileges thereby granted, &c. subject to a condition that the floating or transporting of any rafts, lumber, &c. over said canal, should be at all times prohibited and effectually prevented, otherwise than as might be permitted and allowed by the express consent in writing of the parties of the first part. And it was declared that upon a breach of such condition the grant, &c. should cease and become void, and the grantors should have, hold and enjoy the premises conveyed, &c. In 1842, O. and F., the surviving trustees, extinguished the indian title to the reservation, and took possession of the land, except that part occupied by the defendant. In 1844, W., one of the *cestuis que trust*, died, after devising to the plaintiff the undivided one-fourth of his interest in said indian reservation. And the surviving trustee, in 1845, made a distribution or allotment of the lands, among the *cestuis que trust*, and conveyed to the plaintiff the undivided fourth part of lot 30, in said reservation, including the land occupied by the canal. In an action of ejectment by the plaintiff, claiming to recover the premises so conveyed to him, by reason of a breach by the defendants of the condition in the indenture, respecting the floating of rafts, &c. in the canal;

*Held*, 1. That at the time of the purchase from the indians, by the defendant, the former had the right to occupy and use their lands, and to construct dams and canals, and to float rafts and timber thereon, as they pleased. And that the defendant, by the purchase from them, acquired such right, without any condition that it should cease in case rafts, &c. should be floated upon the canal.

2. That the pre-emptive proprietors, previous to their acquiring the indian title to the land, had merely an exclusive right to purchase from the indians their lands, but not a right to interfere with, or control, the use and enjoyment of the premises while the title remained in the indians.

3. That the condition contained in the indenture being void, neither the pre-emptive owners, nor their grantee, had a right to re-enter, or to maintain ejectment, for a breach of such condition.

4. That when the pre-emptive owners of the reservation acquired the indian title to the same, they took the land subject to the easement which the defendant had lawfully obtained therein, by virtue of an act of the legislature. The state possesses the power to appropriate to public use the lands of the indians, within its territory, upon making compensation therefor; notwithstanding the grant of the right of pre-emption in such lands, to Massachusetts.

Wadsworth *v.* Buffalo Hydraulic Association.

ACTION to recover the possession of the undivided one-fourth of certain real property described in the complaint. In February, 1828, Ogden, Troup and Rodgers, held in trust for the proprietors, the pre-emption title or right to certain lands then possessed and occupied by the Seneca nation of indians, as one of their reservations. The defendants were incorporated in March, 1827. The company obtained from the Seneca nation the right, pursuant to their charter, to enter upon the reservation and make a canal across the reservation, to conduct the water from Buffalo creek to the then village of Buffalo, and they entered and made the canal. It was finished in the fall of 1827. It crosses and occupies a portion of the land in question, known as lot thirty. In February, 1828, an instrument, styled an indenture, was executed by Ogden, Troup and Rodgers, and certain other persons, stated to be parties of the first part, proprietors of a part of the land called the Buffalo creek reservation, subject to the possessory rights of the Seneca nation of indians, &c. and the defendant of the other part, touching the right and privilege of making and using the canal. This indenture is more particularly referred to in the opinion of the court. In December, 1829, Troup, Ogden and Fellows executed a conveyance, whereby all their title to the reservation was vested in Ogden and Fellows and Charles G. Troup, as joint tenants, to have and to hold upon the former trusts, so far as they remained unexecuted. C. G. Troup died in 1834. In 1842, Ogden and Fellows, the surviving trustees, extinguished the indian title to the Buffalo creek reservation and took possession, except of the part occupied by the defendants. Ogden died in 1844. James Wadsworth was one of the *cestuis que trust.* He died in 1844, having devised to the plaintiff the undivided one-fourth of all and singular the right, interest, title and property which he had or owned in or to said indian reservation as *cestui que trust.* Fellows, the surviving trustee, after the indians abandoned the possession of the lands, made a distribution or allotment of the lands among the *cestuis que trust,* and he conveyed portions of the land to divers other persons. In December, 1845, he conveyed to the plaintiff the undivided one-fourth part of the lot known as lot 30, which in-

cludes the land in question. The indenture, above mentioned, executed in 1828, was recorded in that year. It contained many conditions. Those having any application to the questions considered by the court, are noticed in the opinion. The premises claimed in this action constitute the bed and banks of so much of the canal of the defendants, as is within the boundaries of lot 30. Other portions of the reservation, including other portions of the canal, had been conveyed to different persons, some of them *cestuis que trust* and others not. After the indenture of 1828, and before the extinguishment of the indian title in 1842, and while the reservation was in the occupation of the indians, except the canal, the floating and transporting upon the canal of rafts, timber and saw logs by indians and white persons, were not at all times prohibited and effectually prevented by the defendants, but such floating and transporting repeatedly occurred, without the assent of the parties of the first part to the indenture of 1828. The claim of the plaintiff was to recover upon the ground that a condition in the indenture touching the rafting and floating of timber, &c. had been broken. The breach of the condition was admitted by the defendants, but they insisted the plaintiffs could not recover by reason of such breach. The cause was tried by the court and judgment ordered for the plaintiff, and the defendants moved for a new trial.

*Hugh Cameron*, for the plaintiff.

*J. L. Talcott*, for the defendants.

*By the Court*, MARVIN, J.  The defendant was incorporated in March, 1827, and by the 4th section of the act, (*Sess. Laws*, *p.* 44,) the corporation was authorized to contract and agree with the Seneca tribe of indians on the Buffalo reservation, to enter into and upon the reservation and take the waters of Buffalo creek for the purpose of supplying Buffalo with water, &c. and also to make use of any lands necessary for conducting the water for the purposes aforesaid. It was provided that nothing in that section contained should be so construed as to affect the

rights of persons owning the right of pre-emption to the Buffalo reservation. The defendant agreed with the indians and entered upon their lands and constructed the canal. The company also made an agreement or arrangement with the proprietors of the pre-emption right of the reservation. This agreement is evidenced by a deed or indenture executed by the parties, and it will be proper to examine its provisions here. It is recited in the indenture that the parties of the first part are proprietors of a part of the tract of land usually called the Buffalo creek reservation, subject to the possessory right of the Seneca nation of indians, the pre-emption title to which is vested in Troup, Ogden and Rodgers in trust for the proprietors. It is also recited that the use and privilege of Buffalo creek is necessary for the purposes of the corporation, &c. The indenture then witnesseth that the parties of the first part in consideration, &c. "have given and granted, and by these presents do give and grant to the parties of the second part and their successors, the *right and privilege*, by and with the consent of the indians, to enter upon and take possession of such piece of land in the bed of the creek, &c. and to erect a dam and divert the water and to excavate and make a canal, describing it, to conduct the water to the village of Buffalo, &c. to have, hold, use and enjoy all and singular the rights and privileges granted, so long as the association shall endure and exercise the powers and fulfill the objects and purposes of the act. Provided always, and these presents and the rights and privileges hereby granted are on these conditions following, that is to say." Then follow various conditions, and among them, that the floating or transporting on the said canal of any rafts, lumber, timber, saw logs or fire wood, whether by indians or white persons, be at all times prohibited and effectually prevented, otherwise than as may be permitted and allowed by the express consent in writing of the parties of the first part, &c. There is another provision or condition that the parties of the first part, and each of them, and each of their heirs and assigns, being owners of the land within the reservations, shall at all times have free access to the said canal with their horses and cattle, and the right and privilege to use the

waters of the canal for watering their horses and cattle and for other domestic purposes. It is also expressly declared and agreed that, upon any breach or failure in the performance or observance of any or either of the conditions, the grant and the rights and privileges, estate and interest granted or conveyed, and every clause and matter in the indenture, should cease and become void, and that the parties of the first part, &c. should have, hold and enjoy all and every the lands and premises, &c. in the same manner, to all intents and purposes, as if the indenture had never been executed.

On the part of the defendant it was claimed that Troup and others, by the indenture of 1828, conveyed to the defendant what is known in law as a limited fee, and the position is taken that the right of re-entry, for condition broken, can, at common law, be reserved only to a man and his heirs, and that the grantor of the reversion cannot take advantage of condition broken, and that in this particular case the grantors could not enter, because by the severance of the reversion the condition is gone. Also that the breach did not occur in the time of the plaintiff's title. On the part of the plaintiff it is argued that by the deed or indenture of 1828, no fee was granted, but simply an *artificial easement,* during the continuance of the defendants as a corporation, &c. and subject to certain conditions which might determine the easement; and that a breach of the condition terminated the easement without entry; that the estate ceased as soon as the condition was broken, and that the plaintiff could avail himself of the forfeiture produced by the breach.

I am much embarrassed, in attempting to apply to the case the principles applicable to conditional estates, or to easements granted with conditions annexed. The case is peculiar. What title had the parties of the first part in the indenture of 1828, to the land in question? They were the proprietors of "the right of pre-emption of the soil from the native indians." This was all the title they had—the exclusive right to purchase the land whenever the indians were willing to sell. See *Ogden* v. *Lee,* (6 *Hill,* 546,) which as to the title is made a part of this case. The indians had the exclusive right of occupancy so long as they

chose to occupy. They acknowledged no title in any but themselves. The indenture states the possessary right to the Seneca nation of indians, and that the *pre-emption title* is vested in Troup and others. It is true that the indian title has been styled simply a right of occupancy, and the European sovereigns discovering this country, claimed the ultimate title. The course however adopted was to acquire the title of the indians by treaty, in other words, by purchase. And the right to make treaties appertained to the sovereignty. The states, or the United States, succeeded to this right. The state of New-York, by the convention with Massachusetts in 1786, ceded to the latter, "the right of pre-emption of soil from the native indians, and all other the estate, right, title and property, (the right and title of government, sovereignty and jurisdiction excepted,) which the state of N. Y. hath." Whatever may be said as to the precise nature and quaility of the right or title of Troup and others, it is clear that the title of the indians to possess and enjoy their reservations was perfect and unqualified. They had the right to enjoy their possessions, and to use and occupy their lands, in any manner agreeable to them, and for all time to come. This right had been repeatedly guarantied to them by treaty. They had not the right to sell their lands, except to the government; and in the present case, the government having ceded this right, and Troup and others having acquired it, the indians could only sell to them. Such was the condition of the parties when the defendant became a corporation. The state had assumed and exercised a species of guardianship over the indians, and for their protection had prohibited certain dealings between white persons and the indians. All persons were prohibited, without the consent of the legislature, from purchasing any land from the indians, &c. or from entering on or taking possession of any of their lands, or from settling on them, &c. (*See acts relating to Indians,* 3 *R. S.* 271, 3*d ed.*) The power was given to judges of county courts to license schoolmasters and certain other persons for certain purposes, to reside upon the lands of the indians. And in 1836, authority was given to railroad companies to contract with the indians for the right to make their road upon the land of the indians.

The legislature has always exercised the right to regulate the intercourse between the indians and all other persons, touching the use and possession of their lands. In the act incorporating the defendant, the corporation was authorized to contract and agree with the indians to enter into and upon the reservation and take the water of the Buffalo creek, &c. and to make use of any land that should be necessary for conducting the water, &c. This was not, however, to be so construed as to affect the rights of the pre-emption proprietors.

The defendant made a contract with the indians, under the authority of the statute, and entered upon the land and constructed the canal. Now what right and interest did they acquire from the indians and in pursuance of their charter? We have seen that the indians had the right to occupy and use their lands as they pleased. They could erect dams, construct canals, divert the water, and use such canal in any manner agreeable to themselves. They had the perfect right to float rafts, timber or wood or any thing else along and upon any canal they should construct. The defendant was authorized to contract with the indians for the water right and the use of the land for the purpose of supplying Buffalo with water and for hydraulic purposes, and they acquired these rights without any condition that they should cease in case rafts should be floated upon the canal. Now what right had the pre-emptive proprietors to impose upon the indians or the defendant any conditions upon which the right to use and enjoy the lands of the indians, should depend? Their interest or title was an exclusive right to purchase from the indians their lands, not a right to interfere with the enjoyment of the land while the indians should retain their title. It is true that they could annex any conditions they pleased to any grant made by them, of any right they had, whatever that right was. They might have granted the pre-emption right or title upon conditions not void. But I am not able to see upon what principles they could control the use and enjoyment during the time the title of the indians remained out of them, and while their relation to the land was simply that of

the right of pre-emptors. They did not assume to grant the pre-emption right—the only right they had—but " the right and privilege, by and with the consent of the indians, to enter upon and take possession," &c. of certain lands. Now this right and privilege was exclusively vested in the indians, and no one, unless the pre-emptors had the right, could acquire it, without the consent of the legislature. The defendant obtained that consent and then acquired the right and privilege of the indians, and I repeat, I am unable to see how the pre-emption proprietors could interfere. An estate, says Blackstone, (*vol.* 2, 103,) in lands, tenements and hereditaments, signifies such interest as the tenant has therein. It may be a fee simple ; an estate of inheritance ; or for years ; or for life ; it may be a qualified base or determinable estate ; it may be a corporeal or incorporeal hereditament, but it must be some interest in the land, or an interest issuing out of the land. Incorporeal hereditaments are in their nature collateral to, and issue out of lands and houses, and the owner has no property in the lands and houses themselves, but something derived out of them. (2 *Black. Com.* 106.) Annuities, rents, tithes, &c. are incorporeal hereditaments. (2 *Black. Com.* 19, *and ch.* 3 *and* 7. 4 *Kent's Com.* § 54.)

Troup and others had simply the exclusive right to *acquire the title* to the land of the indians, and I cannot conceive or comprehend how this could constitute any *estate.* This right produced no fruits, it imposed no servitudes upon the land. Now all that we find in the books, touching grants upon condition, and who must re-enter for condition broken, relate to an *estate* of some kind ; hence the remark above as to the embarrasment in attempting to apply in this case the principles applicable to conditional estates, or to easements. The rule of the common law undoubtedly is that an estate upon a subsequent condition is not defeated by a breach of the condition, until entry is made by the grantor or his heirs. Conditions can only be reserved for the benefit of the grantor and his heirs. (4 *Kent's Com.* 127.) The estate will continue until the re-entry. (2 *Black. Com.* 155.) The right to re-enter cannot be transferred to another. (*Shep. Touchstone,* 151, 120.)

The common law has been changed by statute, in cases of lands demised; the right of re-entry for causes of forfeiture is extended to the grantee, &c. of the reversion. If a re-entry for breach of the condition was necessary in the present case, the right of re-entry was limited to the grantors and their heirs. This right of re-entry could not be assigned. The plaintiff has title from those who have acquired the indian title since the happening of the breaches, and he is in no condition to take advantage of the breaches of the condition. Such would be the result if this doctrine has any application to the case. But it may be observed that Troup and others had no right themselves to enter upon the land of the indians. They could not maintain ejectment. They had no title and would have been trespassers for any actual entry. It is claimed by the plaintiff that an easement only was granted, and that when the condition was broken the right and privilege ceased and no re-entry was necessary; and it may be that this position is sound. (4 *Kent's Com.* 128. *Shep. T.* 119.) No case, however, has been referred to, where the grant has been of an easement or incorporeal hereditament. But I do not well see how the doctrine of re-entry can be applied in such cases. I shall not, however, enter upon the inquiry.

If we are to consider in this case that Troup and others could make the grant and annex conditions, is it clear that the condition touching the floating of rafts and wood in the canal, was valid? It is said in Shepherd's Touchstone, 119, that it is a general rule that when a man hath a thing he may condition with it as he will. But this rule is subject to the qualification that the disposition must be consistent with the rules of law and not repugnant to the grant or estate. And Kent, (*vol.* 4, 131,) says conditions are not sustained when they are repugnant to the nature of the estate granted, or infringe *upon the essential enjoyment and independent rights of property, and tend manifestly to public inconvenience.* A grant in fee upon condition that the grantee shall not commit waste or take the profits, is good, but the condition is void as being repugnant to the grant. If the condition be not to alien, it is void, being against public

Wadsworth v. Buffalo Hydraulic Association.

policy. In a feoffment made on condition that if the feoffee commit treason the feoffor may re-enter, the condition is void, the king being by law entitled to the estate by forfeiture, and such condition would be in fraud of his prerogative. (*Shep. T.* 129.) As I have shown, the right of the indians to use and enjoy their lands as they pleased, was perfect, and with the consent of the legislature they could confer the right upon others to use their lands in any manner not inconsistent with the right of pre-emption. In the condition touching the floating of rafts, lumber, &c, there is an attempt to curtail and limit these rights. This, it is clear, the pre-emption proprietors could not do. They had no interest which conferred upon them the power to control, in the slightest degree, the use of the canal during the time the indians should remain the owners of the land. But it may be said that they gave their consent, in the form of a grant of the right and privilege to make and use the canal, upon certain conditions, and that if the condition was void the consent or grant is void. This would not be so upon general principles ; for by the general rule, when a condition is void the grant is good and is free from the condition. It is another question whether any thing, any right, passed to the defendant under the indenture of 1828. It seems to me that the pre-emptors had no right or privilege to grant, and that the defendant under its charter and contract with the indians, acquired the right to construct the canal, and use it as long at any rate as the indians retained their title. It would not follow, however, that the consent of the pre-emptors might not be important and affect their rights after they had acquired the indian title. But suppose the indenture of 1828 entirely ineffectual, and as having produced no effect upon the rights of the parties, and how will the case then stand ? When the pre-emptors acquired the indian title, the canal was upon the land ; the defendant was using it for the purpose of its incorporation. The defendant had an easement in the land. Did the pre-emptors acquire from the indians the title to the land discharged from this easement ? This is undoubtedly an important question, and its consideration might involve an inquiry into the power of the legislature to

authorize servitudes upon those indian lands, the right to pur-
chase which was vested in Troup and others.  Many public
roads have been authorized and constructed through these indian
reservations ; it will hardly be contended that when the pre-
emptors obtained the indian title, they had the right to shut up
these roads ; and yet these roads were portions of the land, and
incumbrances or easements enjoyed by the public.  So the canal
in question was an easement upon the land when the pre-emptors
purchased it.  It had been lawfully made.  True, in the act au-
thorizing it and the contract with the indians, all the rights of
the pre-emptors were reserved, and such would have been the
effect had the law been silent.  The question recurs, had the
state the power, after granting away the pre-emption right, to
authorize the construction of canals and roads through the in-
dian lands, with their consent ?  Has the legislature the power
to authorize the taking of the indian lands for public use upon
paying a just compensation, without their consent ?  I am not
aware that this power has ever been seriously questioned.  The
people of the state, in their right of sovereignty, are deemed to
possess the original and ultimate property in and to all lands
within the jurisdiction of the state.  This is so declared in the
statute.  (1 R. S. 718.)  The state possesses the power to ap-
propriate to public use the lands of the indians, notwithstanding
the grant of the right of pre-emption to Massachusetts ; and
it has repeatedly exercised this right.  In 1836, it passed
a general law authorizing railroad companies to contract with
the indians for the right to make roads upon their lands,
but the fee to the land is not to vest in the company, &c.
(Sess. Laws, 1836, 461.)  A railroad has been constructed
through the Allegany reservation in Cattaraugus county.  This
is a portion of the land included in the grant of the pre-emption
right to Masachusetts.  Suppose the pre-emptors purchase this
reservation from the indians, will they have a right to eject the
railroad company ?  Or must they not take it subject to the
rights of the railroad company, subject to the servitude im-
posed upon it by the authority of the legislature and the con-
tract of the indians while they were the owners ?

Wadsworth *v.* Buffalo Hydraulic Association.

It seems to me that the right granted to Massachusetts in 1786, to purchase the lands of the indians, was, and always has been, subject to the right of the state to take and appropriate for public use, the lands to which the right of purchase attached; otherwise a portion of the territory of the state would be beyond its "right of sovereignty." When any of the lands of the indians are taken for roads, railroads, or canals, compensation is made to the indians. They have not parted with their title to the pre-emptors, and may never do so. No compensation is made to the pre-emptors. It may be a matter of prudence to obtain their release or consent, but it seems to me it is not necessary. And when they purchase the land from the indians they take it subject to the servitudes or easements upon it. If this view is sound, it appears to me it disposes of the present case.

But suppose we return to the indenture of 1828, as we have seen it contained a condition, of which, if broken, the grantors could not avail themselves. In other words, they could not deprive the defendant, the grantee, of the use and enjoyment of the canal, so long as the indians refused to sell the reservation to those from whom the plaintiff derives title

This is not the nature, effect, or office of a condition. A condition which is to defeat an estate should be such as the grantor may avail himself of, upon a breach, and thus put an end to the estate. It seems to me the condition should be regarded as void. I am inclined also to the opinion that if it should be regarded as necessary to resort to the indenture of 1828, for any purpose, it should be held to operate as a grant of all the right and privilege, &c. so far as the pre-emptors were concerned, to construct and use the canal. They consented that the defendant might appropriate the water and land for the purposes of their incorporation. This consent or grant could have had reference only to the right and title which they might thereafter acquire from the indians. They confessedly had no title then. There has has been no breach of the condition since they acquired the indian title. The defendant has expended large sums of money in constructing and keeping in repair the water works and

canal, and it should be held protected in the enjoyment of the rights and privileges acquired from the indians under and in pursuance of the charter; and the pre-emptors, who have obtained the indian title, and those claiming under them, should not, under the circumstances, be permitted to disturb the possession of the defendant. In my opinion the judgment should be reversed, and a new trial ordered.

New trial granted.

[NIAGARA GENERAL TERM, February 7, 1853. *Taggart, Marvin* and *Mullett,* Justices.]